## 38962. POULOS v. McMAHAN.

MARSHALL, Presiding Justice.

The present case presents issues concerning the rights of an illegitimate child to inherit from its father under Georgia's intestacy laws. See Code Ann. §§ 113-904, 74-201, 74-103, 74-101; Code Chs. 74-99, 74-3. Questions concerning the constitutionality of these laws are presented.

This case began when the plaintiff, Floy Inez Poulos, as next friend of Michael E. Poulos, a/k/a Michael Edward Jeanson, filed a petition in the Fulton Probate Court seeking to caveat the probate of the will of Paul M. McMahan, who died on June 16, 1979.

In the petition, the plaintiff claims that the decedent was the natural father of Michael Poulos, who was born on November 24, 1973. It is further stated in the petition that the decedent's will does not contain any distribution in favor of Michael Poulos, and it is alleged that the will was the product of undue influence by the decedent's wife, who is the defendant herein.

The probate court ruled that Michael Poulos is in fact the child of the decedent, but the petition to caveat probate of the will was denied because of a lack of evidence of undue influence.

On appeal, the superior court granted the defendant's motion for summary judgment on the ground that Michael Poulos, as an illegitimate child of the decedent, could not inherit from the decedent under the intestacy laws in effect at the time of the decedent's death. The plaintiff appeals, challenging the constitutionality of these intestacy laws.

1. On many occasions, the United States Supreme Court has been presented with the issue of whether a statutory discrimina-

tion against illegitimate children is constitutional. See Mills v. Habluetzel, —— U. S. —— (102 SC 1549, 71 LE2d 770) (1982); Lalli v. Lalli, 439 U. S. 259 (99 SC 518, 58 LE2d 503) (1978); Trimble v. Gordon, 430 U. S. 762 (97 SC 1459, 52 LE2d 31) (1977); Mathews v. Lucas, 427 U. S. 495 (96 SC 2755, 49 LE2d 651) (1976); Beaty v. Weinberger, 478 F2d 300 (5th Cir. 1973), summarily affd., 418 U. S. 901 (1974); Jimenez v. Weinberger, 417 U. S. 628 (94 SC 2496, 41 LE2d 363) (1974); New Jersey Welfare Rights Org. v. Cahill, 411 U. S. 619 (93 SC 1700, 36 LE2d 543) (1973); Griffin v. Richardson, 346 FSupp. 1226 (D. Md. 1972), summarily affd., 409 U. S. 1069 (1972); Davis v. Richardson, 342 FSupp. 588 (D. Conn. 1972), summarily affd., 409 U. S. 1069 (1972); Gomez v. Perez, 409 U. S. 535 (93 SC 872, 35 LE2d 56) (1973); Weber v. Aetna Cas. & Sur. Co., 406 U. S. 164 (92 SC 1400, 31 LE2d 768) (1972); Labine v. Vincent, 401 U. S. 532 (91 SC 1017, 28 LE2d 288) (1971); Glona v. Amer. Guarantee & Liab. Ins. Co., 391 U. S. 73 (88 SC 1515, 20 LE2d 441) (1968); Levy v. Louisiana, 391 U. S. 68 (88 SC 1509, 20 LE2d 436) (1968).[1]

The Supreme Court's tergiversations on this issue are demonstrated in Labine, 401 U. S. 532, supra; Trimble, 430 U. S. 762, supra; and Lalli, 439 U. S. 259, supra. See Note, The Inheritance Rights of Illegitimate Children in Georgia: The Role of a Judicial Determination of Paternity, 16 Ga. L. Rev. 170 (1981); Recent Decisions, Constitutional Law, Lalli v. Lalli, 99 SC 518, supra, 13 Ga. L. Rev. 620 (1979). In each of these latter three cases, the Court was presented with state statutes denying or circumscribing the rights of illegitimate children to inherit from their fathers' estates.

(a) In Labine, a 5-4 majority of the Court sustained the constitutionality of a Louisiana intestate-succession statute,[2]

---

[1] For the most part, the constitutionality of these statutory discriminations has been determined under the Equal Protection Clause of the Fourteenth Amendment.

Under traditional equal-protection analysis, statutory classifications in the area of social and economic legislation have been upheld if any rational basis could be found for the classification. Dandridge v. Williams, 397 U. S. 471 (90 SC 1153, 25 LE2d 491) (1970) and cits. This is known as the rational-basis test. However, the Warren Court developed a two-tier equal-protection test under which legislative discrimination against a suspect class or impinging on fundamental personal rights would not be upheld unless it was supported by a compelling state interest. See Shapiro v. Thompson, 394 U. S. 618 (89 SC 1322, 22 LE2d 600) (1969) and cits. This is known as the strict-scrutiny test. As to statutory discrimination based on sex or illegitimacy, the Burger Court has applied neither the rational-basis test nor the strict-scrutiny test. See Craig v. Boren, 429 U. S. 190 (97 SC 451, 50 LE2d 397) (1976) and cits.; notes 2, 4, 6 & 7, infra.

[2] In Labine, the Court indicated that it was not applying the rational-basis test in upholding the Louisiana statute. Labine, 401 U. S., supra, at p. 536, n. 6. However, the opinion of the Court in Labine fails to elucidate the test being applied.

allowing an illegitimate child to inherit from its father only if his property would otherwise escheat to the state. But see Levy, 391 U. S. 68, supra; Glona, 391 U. S. 73, supra.[3]

Paying great deference to "the power [of the State of Louisiana] to make rules to establish, protect, and strengthen family life as well as to regulate the disposition of property left in Louisiana by a man dying there . . .," Labine, 401 U. S., supra, at p. 538, the majority refused to hold the statute unconstitutional even though it admittedly discriminated against illegitimates.

Thus, the illegitimate child in Labine was not allowed to inherit from her father, even though he had formerly acknowledged her under the provisions of Louisiana law prior to his death.

(b) However, in Trimble, a 5-4 majority of the Court declared unconstitutional an Illinois intestate-succession statute requiring an illegitimate child to prove marriage of its parents and acknowledgment by its father in order to inherit from the father.[4]

One of the stated purposes of the Illinois statute was to promote legitimate family relationships.[5] In accordance with its earlier deci-

---

[3] In Levy, the Court held that a Louisiana wrongful-death statute was violative of the Equal Protection Clause of the Fourteenth Amendment, in that it was not rational for the state to permit any legitimate child, but to deny even dependent illegitimate children, the right to recover for the wrongful death of their mothers. In Glona, the Court held that there was no rational basis for the Louisiana wrongful-death statute's prohibiting a mother from recovering for the wrongful death of her illegitimate son. Thus, Levy and Glona applied the rational-basis test.

Levy was distinguished in Labine, on the ground that the intestate-succession statute under review in Labine did not, like the statute in Levy, create an "insurmountable barrier" to recovery by the illegitimate child. Labine, 401 U. S., supra, at p. 539. The Court in Labine found at least three ways in which the illegitimate child could inherit from her father: first, the father could have executed a will leaving property to her; second, the father could have legitimated the child by marrying the mother; and third, the father could have stated his desire to legitimate the child in his acknowledgment of paternity. However, this rationale was later expressly disapproved in Trimble, 430 U. S., supra, at pp. 773-774.

[4] The Court in Trimble held that the Illinois intestate-succession statute was violative of the Equal Protection Clause in that its "statutory differentiation on the basis of illegitimacy [was not] justified by the promotion of recognized state objectives." Trimble, 430 U. S., supra, at p. 774. This test constitutes something of an amalgam of the rational-basis test and strict-scrutiny test.

[5] Under the rational-basis test, it is not necessary that there be an express purpose for a statute under constitutional attack; the constitutionality of the statute will be upheld if any rational basis can be conceived to support it. See, e.g., Goesaert v. Cleary, 335 U. S. 464 (69 SC 198, 93 LE 163) (1948). However, under the strict-scrutiny test, the burden is on the government to establish the necessity of the statutory classification. See, e.g., Shapiro v. Thompson, 394 U. S. 618, supra. As can

sion in Weber, 406 U. S. 164, supra,[6] the Court held that a state may not attempt to influence the actions of admittedly peccant parents by imposing sanctions against their innocent, albeit illegitimate, children. Trimble, 430 U. S., supra, at p. 769.

Another avowed purpose of the statute under review in Trimble was to establish an efficient method of disposing of property at death. The statute would serve this purpose, because there exist difficult problems of proving the paternity of an illegitimate child. These problems of proof are exacerbated by the putative father's death, and there is a consequent danger of spurious claims being asserted against putative fathers' estates.

The Trimble majority acknowledged that this might justify a more demanding standard for illegitimate children claiming under their fathers' estates than required for illegitimate children claiming under their mothers' estates or for legitimate children generally. Trimble, 430 U. S., supra, at p. 770. However, it was held that the Illinois statute was constitutionally flawed, because it excluded "some significant categories of illegitimate children of intestate men [whose] inheritance rights can be recognized without jeopardizing the orderly settlement of estates or the dependability of titles to property passing under intestacy laws." Id., at p. 771. The illegitimate child in Trimble fit into such a category, in that an Illinois court had entered a paternity order during the deceased's lifetime finding him to be the father of the child and ordering him to contribute to her support.

In Trimble, the Court indicated that to be constitutionally acceptable, a statute would have to "consider the possibility of a middle ground between the extremes of complete exclusion and case-by-case determination of paternity," id., at pp. 770, 771, and thus would have to be "carefully tuned to alternative considerations." Id., at p. 772. Mathews v. Lucas, 427 U. S., supra, at

---

be seen, the Supreme Court places a similar burden on the government when statutory discriminations against illegitimate children are present.

[6] In Weber, the Court had no trouble holding unconstitutional a Louisiana workmen's compensation statute which preconditioned anyone's right to recover survivor's benefits on dependency on the deceased, but which relegated unacknowledged illegitimate children to a status inferior to that of legitimate children and other classes of legitimates.

However, in Weber, the Court clearly was not applying the rational-basis test. In striking down the workmen's compensation statute, the Court found the "essential inquiry" to be: "What legitimate state interest does the classification promote? What fundamental personal rights might the classification endanger?" Weber, 406 U. S., supra, at p. 173.

p. 513.[7]

(c) However, in Lalli, a 3-2-4 plurality of the Court upheld the constitutionality of a New York statute that allowed illegitimate children to inherit from their fathers only if a court of competent jurisdiction had made an adjudication of paternity (referred to under New York law as an order of filiation) during the father's lifetime.

As in Trimble, the argument was made that the New York statute excluded significant categories of illegitimate children who could be allowed to inherit without jeopardizing the orderly settlement of their fathers' estates. As to this argument, the Court responded:

"We do not question that there will be some illegitimate children who would be able to establish their relationship to their deceased fathers without serious disruption of the administration of estates and that, as applied to such individuals, [the New York statute] appears to operate unfairly. But few statutory classifications are entirely free from the criticism that they sometimes produce inequitable results. Our inquiry under the Equal Protection Clause does not focus on the abstract 'fairness' of a state law, but on whether the statute's relation to the state interests it is intended to promote is so tenuous that it lacks the rationality contemplated by the Fourteenth Amendment.

"The Illinois statute in Trimble was constitutionally un-acceptable because it effected a total statutory disinheritance of children born out of wedlock who were not legitimated by the subsequent marriage of their parents. The reach of the statute was far in excess of its justifiable purposes. [The New York statute] does not share this defect. Inheritance is barred only where there has been a failure to secure evidence of paternity during the father's lifetime in

---

[7] In Mathews v. Lucas, the Court upheld provisions of the Social Security Act making dependency on the deceased wage-earner a condition of eligibility for obtaining survivors' children's benefits and creating a presumption of dependency for some categories of illegitimate children but not for others. The Court upheld these statutory classifications, finding them "reasonably related to the likelihood of dependency at death," Mathews, 427 U. S., supra, at p. 509. The Court also found that the statute "does not broadly discriminate between legitimates and illegitimates without more, but is carefully tuned to alternative considerations." Id., at p. 513.

In Mathews, the Court expressly refused to apply the strict-scrutiny test to statutory discriminations against illegitimate children. Id., at pp. 505, 506. However, the Court held that the scrutiny "is not a toothless one." Id., at p. 510. The holding of Mathews was that there must be a substantial relationship between the dis-crimination against the illegitimate and the governmental interests to be served thereby. Id., at pp. 509-510.

the manner prescribed by the State." Lalli, 439 U. S., supra, at pp. 272, 273.

Finding that the purpose of the New York statute was "to provide for the just and orderly disposition of property at death," Lalli, supra, at p. 268, the plurality in Lalli upheld the constitutionality of the statute on the ground that it "bear[s] an evident and substantial relation to the particular state interests this statute is designed to serve." Id.[8]

2. Insofar as it is relevant to this case, Georgia law relating to the illegitimacy of children is as follows:

(a) An illegitimate child is rendered fully legitimate by the marriage of the mother and father, plus recognition by the father of the child as his. Code Ann. §§ 74-101, 74-201; *Morris v. Dilbeck,* 71 Ga. App. 470 (2) (31 SE2d 93) (1944).

(b) In addition, for well over 100 years, there has been a statutory procedure under which the father of an illegitimate child can render the child legitimate, at least for inheritance purposes, by filing a petition in the superior court of the father's residence. Code Ann. § 74-103; *Hicks v. Smith,* 94 Ga. 809 (22 SE 153) (1894). In the leading case of *Hicks v. Smith,* supra, it was held that a legitimation proceeding under § 74-103 does not have the effect of rendering legitimate an illegitimate child according to the full significance of that term, but only the effect to render him so far legitimate as will enable him to inherit from his father. See editorial note to § 74-103.

(c) Prior to 1980, Georgia granted illegitimate children no inheritance rights against their fathers' estates. See former Code Ann. § 113-904 (Ga. L. 1816, Cobb, 293; as amended, Ga. L. 1855-6, p. 228);[9] *Cooper v. Melvin,* 223 Ga. 239 (154 SE2d 373) (1967).

However, in 1980, in obvious response to Trimble and Lalli, the General Assembly amended Code Ann. § 113-904 (Ga. L. 1980, p. 1432, effective April 1, 1980).[10]

---

[8] See note 5, supra.

[9] Former Code Ann. § 113-904 provided:

"Bastards have no inheritable blood, except that given to them by express law. They may inherit from their mother, and from each other, children of the same mother, in the same manner as if legitimate. Legitimate and illegitimate children of the same mother shall inherit alike the estate of the mother. If a bastard dies leaving no issue or widow, his mother, brothers, and sisters shall inherit his estate equally. In distributions under this law the children of a deceased bastard shall represent the deceased parent."

[10] Section 113-904 now provides:

"(a) Illegitimate children have no inheritable blood except that given to them by express law.

"(b) An illegitimate child may inherit in the same manner as if legitimate from and

Under subsection (c) of § 113-904, an illegitimate child may now inherit from his father if "during the lifetime of the father and after the conception of the child a court of competent jurisdiction has entered an order declaring the child to be legitimate under the authority of section 74-103 or such other authority as may be hereafter provided by law or a court of competent jurisdiction has otherwise entered a court order establishing the father of the illegitimate child." Thus, subsection (c) makes reference to three types of paternity adjudications: (1) a legitimation order entered under § 74-103; (2) a legitimation order entered under other legal authority; or (3) some other court order establishing the father of the illegitimate child. As we interpret subsection (c), each of these adjudications of paternity must be made during the lifetime of the father.

(d) It is provided by statute that it is the duty of the father of an illegitimate child to support the child until majority. Code Ann. § 74-202. Accordingly, the mother of an illegitimate child may maintain a civil action to compel the father to support the child. See *Cummings v. Carter,* 155 Ga. App. 688 (272 SE2d 552) (1980); *Simmons v. Chambliss,* 128 Ga. App. 218 (196 SE2d 183) (1973); but see *Y. v. S.,* 224 Ga. 352 (162 SE2d 321) (1968) and cits.

In addition, the Uniform Reciprocal Enforcement of Support Act expressly includes illegitimate children in its operation. Code Ann. § 99-903a (6) (f).

(e) From 1866 to the present date, an adjudication of paternity has been obtainable in an abandonment prosecution. Code Ann. § 74-9902 (Ga. L. 1866, p. 151, as amended; 1980, pp. 1374, 1378); see Jones v. Helms, 452 U. S. 412 (101 SC 2434, 69 LE2d 118) (1981); *Smith v. State,* 42 Ga. App. 419 (156 SE 308) (1930). The offense of abandonment is committed by wilfully leaving one's child in an

---

through his mother, from and through the other children of his mother, and from and through any other maternal kin whether collateral or lineal.

"(c) An illegitimate child may not inherit from or through his father or any paternal kin by reason of the paternal kinship unless during the lifetime of the father and after the conception of the child a court of competent jurisdiction has entered an order declaring the child to be legitimate under the authority of section 74-103 or such other authority as may be hereafter provided by law or a court of competent jurisdiction has otherwise entered a court order establishing the father of the illegitimate child. If such an order has been entered, an illegitimate child may inherit in the same manner as if legitimate from and through his father, from and through the other children of his father, and from and through any other paternal kin whether collateral or lineal.

"(d) In distributions under this law, the children of a deceased illegitimate child shall represent the deceased parent."

abandoned state or, as otherwise stated, by wilfully and voluntarily separating from the child and failing to supply its necessaries. *Smith v. State,* supra.

(f) Prior to 1973, an adjudication of paternity could also be obtained in a statutory bastardy proceeding. Code Ch. 74-3 (Ga. L. 1793, Cobb, 148; as amended; Ga. L. 1972, pp. 494-496). See also Code Ann. § 74-9901 (Cobb, 818; Ga. L. 1865-6, p. 233; 1982, p. 102; 1902, p. 57) (making the offense of bastardy a misdemeanor); *Green v. State,* 49 Ga. App. 252 (175 SE 26) (1934); *Craft v. State,* 21 Ga. App. 258 (94 SE 281) (1917). A bastardy proceeding was instituted by affidavit of the mother and was a special statutory proceeding partially criminal and partially civil in character. *Craft v. State,* supra.

The offense of bastardy was committed by "the father of a bastard child, and refusing to give security for its maintenance and education and for the lying-in of the mother when required to do so by the terms of the law." *Luke v. State,* 66 Ga. App. 589 (18 SE2d 642) (1942) and cits. However, Code Ch. 74-3 was repealed in 1973 (see Ga. L. 1973, p. 697), and with that repeal the bastardy proceeding was abolished. This necessarily resulted in abolition of the offense of bastardy under § 74-9901. *Tillman v. State,* 249 Ga. 792 (294 SE2d 516) (1982).

(g) In 1980, the General Assembly enacted a new Code Ch. 74-3 entitled, "Determination of Paternity." Ga. L. 1980, p. 1374. This new Code Chapter provides a civil procedure for the determination of paternity and the entry of orders for the support of the child. Under Code Ann. § 74-304, a petition to establish paternity of the child may be brought by several parties including the father or mother. Code Ann. § 74-310 (a) provides, "On a finding that the alleged father is the father of the child, the court shall issue an order designating the alleged father as the father of the child. *The sole effect of such order shall be to establish the duty of the father to support the child."* (Emphasis supplied.)

3. Rendered in Georgia in 1980 are conflicting federal decisions concerning the rights of illegitimate children to inherit from their fathers.

(a) In Cox v. Harris, 486 FSupp. 219 (M. D. Ga. 1980), which was decided on March 19, 1980, the United States District Court for the Middle District of Georgia ruled that under Lalli, 439 U. S. 259, supra, Georgia's pre-1980 intestacy statutory scheme was constitutional insofar as it determined the rights of illegitimate children to inherit from their fathers.

Cox involved an application for Social Security survivor's benefits by an illegitimate child of a deceased wage earner. The application was filed in 1977. Under the Social Security Act, one of

the methods whereby an illegitimate child may obtain survivor's benefits is if the child can inherit personal property from the father under the laws of intestate succession in the state in which the father was domiciled.

In sustaining the constitutionality of Georgia's pre-1980 intestacy scheme and, therefore, ruling that the illegitimate child could neither inherit from his father nor obtain Social Security survivor's benefits, the district court stated:

"In applying the reasoning of the Supreme Court to the instant case, the court can perceive no substantial difference between the New York statute and Georgia's own intestacy statute. The Georgia statute, like New York's, does not preclude the middle ground to which the Court referred in Trimble. Furthermore, by incorporating legitimation by marriage of the parents into the intestacy statute in its disjunctive sense, the burden which an illegitimate child must overcome is one less stringent than the standard promulgated in New York.

"Finally, the court notes that plaintiff's attempts to distinguish the New York and Georgia statutes are without merit. First, plaintiff contends that under New York law a child need not be legitimated in order to inherit from his father. This is patently an incorrect interpretation; the New York filiation law provides that '(a)n illegitimate child *is* the legitimate child of his father so that he and his issue inherit from his father . . .' A petition by the father, under Georgia law, serves the same end for purposes of the inheritance statutes. Likewise, plaintiff's argument that Lalli is only a plurality opinion does not sway the court for it is clear that a majority of the Court favor the constitutionality of the New York statute. (Two of the Justices would, however, in upholding the statute, overrule Trimble.) Based upon Lalli, the court finds that the Georgia statute is constitutionally firm." Cox v. Harris, 486 FSupp., supra, at pp. 221, 222.

(b) However, in Cox v. Schweiker, —— F2d —— (Docket No. 80-7430; decided August 30, 1982), the former Fifth Circuit Court of Appeals reversed Cox v. Harris, supra. In Cox v. Schweiker, the Court of Appeals held unconstitutional Georgia's pre-1980 statutory intestacy scheme.

In Cox, the Court of Appeals held that under Trimble and Lalli, Georgia's intestate statutory scheme for determining the paternal inheritance rights of illegitimate children was constitutionally infirm as of 1977, in that control over the means for bestowing inheritance rights on the illegitimate child was solely in the father. Nonetheless, the Court in Cox did recognize that due to evidentiary problems in proving paternity, the state may maintain some system of intestate

property disposition that excludes illegitimate children. Accord, Mills v. Habluetzel, supra.[11]

The Court of Appeals in Cox held that since Georgia's pre-1980 statutory scheme unconstitutionally excluded all illegitimate children from inheriting from their fathers, the remedy for rectifying the unlawful discrimination is to extend inheritance rights to all illegitimate children. Since the administrative law judge had found that the child in Cox was in fact the illegitimate child of the decedent, the Court of Appeals held that his right to inherit from his father must be recognized.

(c) In Crews v. McCarroll, C. D. 479-26 (S. D. Ga. 1980), which was decided on July 7, 1980, the United States District Court for the Southern District of Georgia ruled that under Trimble, 430 U. S. 762, supra, the pre-1980 Georgia statutory intestacy scheme violated the Equal Protection Clause of the Fourteenth Amendment in its treatment of the paternal inheritance rights of illegitimate children. However, the court in Crews disposed of that case in a manner inconsistent with the disposition of the case in Cox.

As in the present case, Crews involved a caveat to a will by an allegedly illegitimate child of the testator. In its resolution of the controversy in Crews, the district court relied on the holding in Trimble that the Illinois statute was unconstitutional there because it unnecessarily excluded some significant categories of illegitimate children whose inheritance rights could be recognized without jeopardizing the orderly settlement of estates or the dependability of titles to property passing under testacy laws. In Crews, the court noted that the plaintiff's mother could have obtained but did not obtain an adjudication of paternity during the lifetime of the father

---

[11] In Mills, the Court struck down as violative of the Equal Protection Clause a Texas statute providing that a paternity suit to identify the natural father of an illegitimate child for purposes of obtaining support must be brought before the child is one year old. In Gomez v. Perez, 409 U. S. 535, supra, the Court had held that under the Equal Protection Clause illegitimate children must be given a judicially enforceable right to obtain support from their natural fathers, where legitimate children are entitled to such support. In Mills, the holding of the Court was that the opportunity to obtain support must be more than illusory; although, because paternal support suits on behalf of illegitimate children entail difficult problems of proving paternity, the procedures for illegitimate children need not be coterminus with those for legitimate children. As to this, the Court stated: "[I]n support suits by illegitimate children more than in support suits by legitimate children, the State has an interest in preventing the prosecution of stale or fraudulent claims and may impose greater restrictions on the former than it imposes on the latter. Such restrictions will survive Equal Protection scrutiny to the extent they are substantially related to a legitimate State interest." 102 SC at p. 1554.

through a bastardy proceeding. For this reason, the court found that the plaintiff in Crews was not a member of the class of illegitimate children whose inheritance rights could be recognized without jeopardizing the orderly settlement of estates. Therefore, the plaintiff's action was dismissed.

4. We agree with the reasoning employed in Crews v. McCarroll, supra, that Georgia's pre-1980 intestacy scheme was unconstitutional, not because it excluded all illegitimate children, but rather because it excluded significant categories of illegitimates whose inheritance rights could be recognized without jeopardizing the orderly administration of estates.

The plaintiff here does not fit within such a category, because there could have been but was not an adjudication of paternity during the decedent's lifetime.[12] Since there was no such adjudication, we hold that the plaintiff has no inheritance rights here notwithstanding any unconstitutionality in Georgia's pre-1980 statutory intestacy scheme as it related to the rights of illegitimate children to inherit from their fathers.[13]

Accordingly, the judgment is affirmed for the reasons given in this opinion.

*Judgment affirmed. All the Justices concur, except Weltner, J., who dissents.*

DECIDED NOVEMBER 30, 1982.

*James L. Ford,* for appellant.
*Charles E. Moore,* for appellee.

---

[12] Here, the plaintiff could have obtained an adjudication of paternity during the decedent's lifetime by charging him with the offense of abandonment or by filing a civil action for child support payments.

[13] The constitutionality of Georgia's present statutory scheme as it relates to the paternal inheritance rights of illegitimate children is a question not presently before this court. However, we do not consider it inappropriate to note, admittedly by way of dicta, that there is serious doubt as to the constitutionality of the provision in § 74-310(a) that the sole effect of an order entered under Ch. 74-3 shall be to establish the duty of the father to support the child. As stated in Trimble v. Gordon, 430 U. S., supra, at p. 772: "That adjudication [in a state-court paternity action prior to the decedent's death] should be equally sufficient to establish [the illegitimate's] right to claim a child's share of [her father's] estate, for the State's interest in the accurate and efficient disposition of property at death would not be compromised in any way by allowing [the illegitimate's] claim in the circumstances."

WELTNER, Justice, dissenting.

I respectfully dissent. While the majority opinion presents a thoughtful analysis of the treatment of this issue by the United States Supreme Court, we need look no further than our own Constitution.

Art. I, Sec. II, Par. III of the 1976 Georgia Constitution (Code Ann. § 2-203) provides: "Protection to person and property is the paramount duty of government, and shall be impartial and complete."

Paternity either *is,* or is *not,* independent of any judicial procedure. The exclusion of a child from the estate of his father (but not of his mother) as provided in former Code Ann. § 113-904 (a) is a bar sinister which creates an invidious distinction between children of the same father — as between themselves, and, as a class, between them and the children of the same mother. Thus the law would impose a penalty upon the *only* person concerned in a birth out of wedlock who cannot possibly be found at fault.

The statute violates the constitutional requirement of impartial and complete protection to person and property.

"Legislative acts in violation of this Constitution, or the Constitution of the United States, are void, and the Judiciary shall so declare them." 1976 Ga. Const., Art. I, Sec. II, Par. VIII (Code Ann. § 2-208).

I believe that Code Ann. § 113-904 (a) and its complementary provisions are unconstitutional, and would so declare them.