## 41498. THOMPSON v. BROWN et al.
(326 SE2d 733)

SMITH, Justice.

J. C. Morris died intestate leaving no spouse or children surviving. He left no real property. His known heirs are: two sisters, two

brothers, and the two children of a deceased sister. Appellant, Reuben Howard Thompson, contends that as the son of Elmer Sam Morris, the deceased brother of J. C. Morris, he is an heir. The probate and trial courts found that appellant was an illegitimate child and could not inherit. We do not agree and reverse the trial court's denial of certiorari.

Mrs. Elizabeth Brown, appellee and administratrix of the estate, filed a petition in the Floyd County Probate Court to determine the heirs. The probate court held that appellant was not an heir. Appellant filed exceptions to the order and filed a motion to have it vacated. The exceptions were overruled and the motion denied. Appellant filed a petition for certiorari to the Floyd County Superior Court, and it was denied.

The main witnesses at the hearing were: Sam's two sisters, appellant, and appellant's two neighbors. Both of Sam's sisters lived out of town and visited him only occasionally. They testified that Sam was married to Lottie Morris. Neither was present at the time of the marriage and there was no evidence of a ceremonial wedding. Lottie and Sam had no living children. Both sisters were introduced to appellant as Sam's son. One of the sisters produced a Bible in which appellant was listed as Sam's son. Neither testified that they knew Sarah Anita Thompson, appellant's mother, and both testified that at the time of Sam's death he was married to Lottie.

The neighbors and appellant testified that at the time of appellant's birth in 1949, Anita, Sam, and Anita's mother lived as a family. Anita and Sam held themselves out as husband and wife. Anita talked about wanting a church marriage, but she referred to Sam as her husband. Sam referred to Anita as his wife. Sam acknowledged appellant as his son to the community, and family members. Church and school records showed that appellant used the name Morris. Sam continued to live with Anita and appellant until sometime during the mid-to-late '50s when he began leaving and returning only occasionally.

It is unclear what happened between Anita and Sam. Appellant questioned his mother about his father, but never found out why he finally left. Both Anita and Elmer died in 1962 when appellant was 12 years old. Anita's death certificate, filled out with information provided by her mother, lists Anita's marital status at the time of death as "divorced."

The superior court disagreed with the probate court that Sam might be appellant's father and held that beyond a reasonable doubt he was appellant's father. The court found that there was no marriage between appellant's parents because: 1) Elmer was *married to Lottie* and that his *marriage to her continued* until the time of his death in 1962; 2) The relationship between Anita and Sam was never legiti-

mated by a ceremonial or common-law marriage because the *marriage to Lottie was not dissolved*; and 3) There was testimony that Elmer continued to make his home with Lottie. The court agreed with the probate court's reasoning and reliance on *Poulos v. McMahan*, 250 Ga. 354 (297 SE2d 451) (1982), that appellant was incapable of inheriting through his father's family since there had been no adjudication of paternity during Sam's lifetime.

1. We begin with appellant's second enumeration of error in which he contends that the trial court erred in denying certiorari because it found that appellant's right to inherit from his father or his father's family depended upon a valid marriage between his parents. We agree.

The court order clearly states only one reason for failing to find a marriage between appellant's parents, and that was Sam's previously undissolved marriage to Lottie. The marriage to Lottie prevented Sam from being able to contract a valid marriage with Anita. See OCGA §§ 19-3-2 (3), 19-3-1 (1). But it did not prevent an apparent common-law marriage, void though it may have been, between Anita and Sam. See OCGA § 19-3-5 (a). The void marriage in this case did not result in appellant being an illegitimate child. "Georgia abandoned the common-law rule that made the children of a void marriage illegitimate, and adopted the civil-law rule that the [children] of certain void marriages, before they were annulled, were to be considered legitimate. This change as to certain void marriages appeared in the Code of 1863 (§ 1657)." *Campbell v. Allen*, 208 Ga. 274, 279 (66 SE2d 226) (1951). It now appears in OCGA § 19-3-5 (a) as follows: "Marriages of persons unable to contract, unwilling to contract or fraudulently induced to contract shall be void. However, the issue of such a marriage born before the marriage is annulled and declared void by a competent court shall be legitimate."

Appellant was born of a void marriage between his parents. There being no evidence that the marriage was annulled before appellant's birth, the court erred in holding that appellant's right to inherit from his father or his father's family depended upon a valid marriage between his parents.

2. Division 1 renders appellant's constitutional challenge to *Poulos v. McMahan*, supra, moot.

*Judgment reversed. All the Justices concur.*

DECIDED MARCH 5, 1985 —
REHEARING DENIED MARCH 28, 1985.

*Barry V. Smith*, for appellant.

*Jerry L. Minge, W. Gene Richardson,* for appellees.