### S92A0217. GRISSOM et al. v. GLEASON et al.
(418 SE2d 27)

FLETCHER, Justice.

We granted this application for interlocutory appeal to decide whether the Motor Carrier Act violates the state equal protection clause by permitting an injured person to sue the insurance carrier in the same action brought against the motor carrier. Adhering to our previous decisions that the joinder does not violate equal protection, we affirm.

A. B. Grissom was driving a tractor-trailer truck owned by Dixie Hauling Company when he struck and killed Edward P. J. Gleason. Melanie Gleason, as sole heir and administrator of her father's estate, sued Grissom and Dixie Hauling for negligence. She also sued Integral Insurance Company, which provided liability insurance to Dixie Hauling in lieu of a bond, as provided under OCGA § 46-7-12. Grissom

and Dixie Hauling moved to drop Integral as a defendant on the grounds that OCGA § 46-7-12 (e) violates equal protection under this court's decision in *Denton v. Con-Way Southern Express*, 261 Ga. 41 (402 SE2d 269) (1991). The trial court denied the motion and issued a certificate of immediate review.

1. OCGA § 46-7-12 (e) provides:

> It shall be permissible under this article for any person having a cause of action arising under this article in tort or contract to join in the same action the motor carrier and its surety, in the event a bond is given. If a policy of indemnity insurance is given in lieu of bond, it shall be permissible to join the motor carrier and the insurance carrier in the same action, whether arising in tort or contract.

This joinder provision does not make an arbitrary or unreasonable classification in violation of Art. I, Sec. I, Par. II of the Constitutions of Georgia of 1877 and 1945 or the Fourteenth Amendment of the United States Constitution. *Lloyds America v. Brown*, 187 Ga. 240, 243 (200 SE 292) (1938); *Harper Motor Lines v. Roling*, 218 Ga. 812, 818 (130 SE2d 817) (1963). In *Harper Motor*, as in this case, the motor carrier argued that the joinder provision prejudiced it by injecting the matter of insurance into the case and was an unreasonable classification without any rational basis. Finding that the *Lloyds* decision controlled, we held that the joinder of the motor carrier and its insurer in the same action did not violate the equal protection or due process clauses of the Georgia Constitution. Id. We find nothing new in Dixie Hauling's argument that would change our previous holdings.

2. Dixie Hauling, however, contends that our prior decisions are no longer controlling because of changes in the equal protection clause of the Constitution of Georgia of 1983. The equal protection clause in prior Georgia Constitutions provided: "Protection to person and property is the paramount duty of government and shall be impartial and complete." Ga. Const., Art. I, Sec. II, Par. III (§ 2-203) (1976); Art. I, Sec. I, Par. II (§ 2-102) (1945); Art. I, Sec. I, Par. II (§ 2-102) (1877). The 1983 Constitution contains a second sentence in the paragraph, which states: "No person shall be denied the equal protection of the laws." Ga. Const., Art. I, Sec. I, Par. II (1983).

The addition of the second sentence to the second paragraph of the 1983 Constitution does not require a new equal protection rule in this state. See *Horton v. Hinely*, 261 Ga. 863, 864 (413 SE2d 199) (1992). Prior to the adoption of the 1983 Constitution, this court interpreted the "impartial and complete" provision as comparable to the equal protection clause of the Fourteenth Amendment of the United States Constitution. *State v. Sanks*, 225 Ga. 88, 91 (166 SE2d

19) (1969); *Georgia R. &c. Co. v. Wright*, 125 Ga. 589, 601 (54 SE 52) (1906), rev'd on other grounds, 207 U. S. 127 (1907). Since the adoption of the 1983 Constitution, we have reiterated that the protection of the equal protection clause in the 1983 Georgia Constitution and the United States Constitution is coextensive. *Ambles v. State*, 259 Ga. 406 (383 SE2d 555) (1989).[1]

We disapprove of *Denton v. Con-Way* to the extent that it suggests a new equal protection analysis. Despite the concurring opinions' invocation of stare decisis, the *Denton* decision is an aberration in this court's interpretation of the equal protection provision. A fundamental problem with the *Denton* opinion, which neither special concurrence addresses, is its failure to provide a standard for applying the "impartial and complete" provision. The opinion does not explain what the provision means, to whom it applies, or how it offers more protection than the explicit guarantee of equal protection immediately following it.

Moreover, the legislative history of the 1983 Constitution does not support the *Denton* opinion's conclusion that "impartial and complete" must mean something different than equal protection.[2] The legislative history shows that a primary conflict concerning the equal protection clause was between supporters of the "impartial and complete" language and advocates of an explicit guarantee of equal protection. See, e.g., Select Comm. on Constitutional Revision, Transcripts of Meetings, Dec. 17, 1979 at 11-21, 39-41; Jan. 9, 1980 at 42-44, 51-55; Legis. Overview Comm., June 17, 1981 at 103-117. The Article I and Select Committees recommended an express prohibition

---

[1] We do not foreclose the possibility that this court may interpret the equal protection clause in the Georgia Constitution to offer greater rights than the federal equal protection clause as interpreted by the United States Supreme Court. See, e.g., *State v. Miller*, 260 Ga. 669, 671 (398 SE2d 547) (1990) (finding 1983 Georgia Constitution provides broader protection than the First Amendment); *Green v. State*, 260 Ga. 625, 627 (398 SE2d 360) (1990) (finding State Constitution grants a broader right against self-incrimination than the U. S. Constitution); *Fleming v. Zant*, 259 Ga. 687, 690 (386 SE2d 339) (1989) (holding state constitutional guarantee against cruel and unusual punishment is more extensive than federal constitutional standard).

[2] The comments from the committee meetings on the equal protection paragraph are inconclusive about the meaning of "impartial and complete." For example, some individuals thought the two "equal protection" sentences were logically connected. See, e.g., Comm. to Revise Art. I, Oct. 5, 1979, at 61 (statement of Gene Guerrero) (the statement "is saying that the fundamental duty of government is to protect individuals, persons and property and that in that protection each citizen is entitled to equal protection"). Some persons thought the two sentences said the same thing. See, e.g., Comm. to Revise Art. I, Oct. 25, 1979, at 10 (statement of F. H. Boney) ("You're getting extremely close to equal when you say 'shall be complete and impartial.' I don't know what it would mean if it didn't mean that."). Finally, some people thought the first sentence meant nothing. See, e.g., Select Comm., Jan. 9, 1980, at 55 (statement of House Speaker Thomas B. Murphy) ("I think that particular paragraph of our Constitution is a magnificent statement of nothing.").

against the denial of equal protection.[3] See Comm. to Revise Art. I, Nov. 9, 1979 at 6-8; Select Comm., Dec. 17, 1979 at 52-53. The Legislative Overview Committee, however, deleted the recommendation and reinserted the "impartial and complete" provision from the 1976 Constitution. See Legislative Overview Comm., Vol. I, June 17, 1981 at 111-117. The Georgia General Assembly adopted both provisions as one paragraph entitled "Protection to person and property; equal protection." See 1981 Ga. Laws, Extraordinary Session, pp. 142, 143. Therefore, the paragraph presented to voters was a compromise between the two views on the best language to guarantee equal protection in the State Constitution. Since this legislative history does not support giving a new meaning to "impartial and complete" protection, we reject the recent analysis adopted in the *Denton* opinion.

3. Because no fundamental right or suspect class is involved, the disparate treatment between motor carriers and other defendants must meet only the rational relationship test. See *Wilson v. Zant*, 249 Ga. 373, 384-385 (290 SE2d 442) (1982). Under that test, statutory classifications are permitted when the classification is based on rational distinctions and bears a direct relationship to the purpose of the legislation. *Home Materials v. Auto Owners Ins. Co.*, 250 Ga. 599, 600 (300 SE2d 139) (1983).

The differential treatment of motor carriers and other insured defendants is based on a rational distinction directly related to the purpose of the Motor Carrier Act. The statute's purpose is to protect the public against injuries caused by the motor carrier's negligence. OCGA § 46-7-12 (a). The statute requires motor carriers to obtain a security bond or, in lieu of the bond, self-insurance or indemnity insurance, "for the benefit of . . . any person who shall sustain actionable injury or loss." OCGA § 46-7-12 (b), (c), and (d). The carrier's insurance policy "is not one of indemnity against loss as that term is generally understood[,] but is a direct and primary obligation to any person who shall sustain actionable injury or loss." *Great American Indem. Co. v. Vickers*, 183 Ga. 233, 236 (188 SE 24) (1936). The injured person may sue the insurer directly on the insurance contract, as in an action against a surety on a surety bond. Id. at 237; see *Farley v. Continental Ins. Co.*, 150 Ga. App. 389, 390-391 (258 SE2d 8)

---

[3] Advocates of the explicit guarantee of "equal protection" disagreed on whether to add a specific reference to "race, sex, national origin, religion or ancestry." For example, the Article I Committee proposal stated:

No person shall be deprived of life, liberty, or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of civil rights nor be discriminated against in the exercise thereof because of race, sex, national origin, religion or ancestry.

See Article I Comm., Nov. 9, 1979 at 6-8. The Select Committee's proposal deleted all of the words after "thereof." See Select Comm., Jan. 9, 1980 at 42-43.

(1979). Permitting joinder of the carrier and insurer in the same action enables injured persons to recover compensation more efficiently and quickly and encourages insurers to resolve legitimate claims by settlement. Because the joinder provision of the Motor Carrier Act bears a reasonable relationship to the state's legitimate interest in protecting the public, the statute does not violate the state's equal protection clause.

*Judgment affirmed. All the Justices concur, except Bell, P. J., Benham and Sears-Collins, JJ., who concur specially, and Weltner, C. J., who dissents as to Divisions 1, 3 and the judgment.*

BENHAM, Justice, concurring specially.

Although I agree with the majority that OCGA § 46-7-12 (e) is not violative of the Georgia Constitution's guarantee of equal protection of the law, I am compelled to write separately to decry the majority's unnecessary abandonment of precedent.

"Stability and certainty in law are desirable; stare decisis is a valid and compelling basis of argument. [Cit.]" *Hall v. Hopper*, 234 Ga. 625, 631 (216 SE2d 839) (1975). Barely a year has passed since the decision in *Denton v. Con-Way Southern Express*, 261 Ga. 41 (402 SE2d 269) (1991), was announced by this court. "[T]he doctrine of stare decisis seems to be less viable year by year." *Crumbley v. Solomon*, 243 Ga. 343, 349 (254 SE2d 330) (1979) (Justice Bowles' dissent). The haste with which *Denton* has been first disregarded (see *Horton v. Hinely*, 261 Ga. 863 (413 SE2d 199) (1992)) and now disapproved damages the reliability and credibility of this court's decisions and adds to instability and uncertainty in the law.

> Perhaps the doctrine of stare decisis is no longer in vogue, but is it not unsettling to the practicing bar to recognize the willingness of this court to alter its interpretation of [the constitution] as subsequent cases arise?

*Spivey v. Whiddon*, 260 Ga. 502, 505 (397 SE2d 117) (1990) (Justice Hunt's dissent, in which Justice Fletcher joined).

I would further object to the court's disapproval of *Denton* because the interpretation therein of Georgia's equal protection guarantee is correct. As was pointed out there, it is contrary to our jurisprudence to presume that part of our constitution is meaningless. That is, however, exactly what the majority rules in this case, that the addition of the second sentence to Art. I, Sec. I, Par. II of the Constitution of the State of Georgia of 1983 changed nothing, meant nothing. As the majority correctly notes, the record does not explicitly explain what was intended by the drafters of the amendment or by those who voted for it. But that is exactly why there are so many cases exhorting

us to seek the intent of a statute or constitution and to construe the law to support that intent. The decision in *Denton* was true to this court's duty to interpret the constitution and it would behoove this court to adhere to that interpretation until and unless it becomes clear that it was mistaken.

Finally, the disapproval of *Denton* was not necessary to reach the correct result in this case. This is not a situation, such as that involved in *Denton*, in which one party is prejudiced by the injection of insurance into the case. As the majority correctly points out, the type of insurance policy involved here is not the usual indemnity against loss, but an obligation to which the insurer itself is properly held to answer. Thus, we do not have the statutory partiality toward defendants at the expense of plaintiffs which was objectionable in *Denton*. This case is, therefore, distinguishable from *Denton*, and is an inappropriate vehicle for abandoning the constitutional interpretation reached there.

Since I believe that the majority, though in error in its treatment of *Denton* and of Art. I, Sec. I, Par. II, Ga. Const. 1983, is correct in ruling that OCGA § 46-7-12 (a) does not violate the equal protection guarantees of the Georgia Constitution as interpreted in *Denton*, I concur in the affirmance of the trial court's order.

SEARS-COLLINS, Justice, concurring specially.

I agree with the result of the opinion authored by Justice Fletcher, however, I disagree that the protections provided to the people of Georgia under Art. I, Sec. I, Par. II of the Georgia Constitution are limited to the boundaries of the equal protection clause contained in the Fourteenth Amendment of the United States Constitution. A careful analysis of Georgia's Constitutions, history, and the statements of the framers of the Georgia Constitution of 1983 requires that we reject such a narrow reading of the rights of our citizens.

Art. I, Sec. I, Par. II is entitled, "Protection to person and property; equal protection," and provides:

> Protection to person and property is the paramount duty of government and shall be impartial and complete. No person shall be denied the equal protection of the laws.

The deciding opinion urges rejecting *Denton v. Con-Way Southern Express*, 261 Ga. 41 (402 SE2d 269) (1991), to the extent that it interprets the provisions to require a different equal protection analysis than that used in construing the equal protection clause of the Fourteenth Amendment to the United States Constitution.

I disagree for two reasons. First, the United States Constitution merely sets forth the minimum rights due to citizens of our nation.

Second, *Denton* properly recognized that a different equal protection analysis was created by the Georgia Constitution of 1983, and correctly interpreted the language of that document to afford Georgia citizens greater rights and more benefits than does the United States Constitution. *Colonial Pipeline v. Brown*, 258 Ga. 115, 118 (365 SE2d 827) (1988). The grant of these greater rights and benefits is apparent from reading both Art. I, Sec. I, Par. II and the history of its development.

I begin by noting that there are two complementary (but not identical) concepts in the title of Art. I, Sec. I, Par. II: "Protection to person and property; equal protection." One concept is stated in the second sentence of the body of the provision: No person shall be denied the equal protection of the laws. The other concept, has a longer history in the various constitutions of this state, and is stated in the initial sentence of the provisions: Protection to persons and property is the paramount duty of government and shall be impartial and complete. A brief recount of the history of this initial clause is important.

After the onset of the War Between the States, the Georgia Constitution of 1861 was adopted, and it included the state's first formal Bill of Rights (the "Declaration of Fundamental Principles"). In those guarantees was the first declaration of the duty of government to protect the rights and property of Georgians. Chanin & Cassidy, Guide to Georgia Legal Research and Legal History, § 2-7 (1990). After the war, the provision was retained in the Constitution of 1865 by the following language: "Protection to person and property is the duty of government." McElreath, A Treatise on the Constitution of Georgia (1912). In 1868, a third provision was adopted containing the language used in the first sentence of our present day equal protection provisions: "Protection to person and property is the paramount duty of government and shall be impartial and complete."[4] Code of Georgia of 1873.

The Georgia Constitution of 1861 closely followed the 1789 Georgia Constitution (with its attendant Lockeian principles that government is derived from the consent of the people and exercises only limited authority over individual states and their people), but expanded the enumerated duties of government to specifically include the protection of persons and property. See, e.g., Chanin & Cassidy, supra at §§ 2-2—2-7. Thus, the original language in the Declaration of

---

[4] The original language in the Declaration of Fundamental Principles was created as a result of the long dispute between the Confederate states and the United States government over the rights of fugitive slaves. Chanin & Cassidy, Guide to Georgia Legal Research and Legal History, § 2-7 (1990). It appears that the language "impartial and complete" was included by the drafters of the 1868 Constitution in order to protect against the resistance to Reconstruction and to fully protect the rights of newly freed slaves.

Fundamental Principles was created, in part, as a result of the long tradition in Georgia of granting its citizens the utmost in protection from governmental interference in their persons and property. This governmental duty was carried over and intensified in the Constitution of 1868 by the addition of language denoting the duty as being the "paramount" one of government, and by requiring further that the protections be "impartial and complete." This language has been repeated in every Georgia Constitution since 1868.

I recite this history to illustrate that Georgia's various constitutions have traditionally developed on an independent path from that of the United States Constitution.

In *Georgia R. &c. Co. v. Wright*, 125 Ga. 589 (54 SE 52) (1906), rev'd on other grounds, 207 U. S. 127 (1907), the court stated that

> When the [Georgia Constitution] declares that protection to person and property shall be impartial and complete, it but states in other language the same principle laid down in the [C]onstitution of the United States . . . that no State shall deny to any person the equal protection of the laws.

Id. at 601. Four members of our court would have us believe that this language made our constitutional provision merely a carbon copy of federal equal protection doctrine.[5]

I disagree.

The correct analysis was given by Chief Justice Weltner in his dissent in *Poulos v. McMahan*, 250 Ga. 354, 365 (297 SE2d 451) (1982), where he acknowledged the different and greater protections offered by the language: " 'Protection to person and property is the

---

[5] It is important to note that the other cases cited in the deciding opinion, regarding the equal protection issue, do not support the contention that the first sentence of Art. I, Sec. I, Par. II of the Constitution of 1983 is a mere restatement of the Fourteenth Amendment guarantee of equal protection. The reliance on *Horton v. Hinely*, 261 Ga. 863 (413 SE2d 199) (1992), is curious. That case makes no mention of what analysis was used and at best is a violation of stare decisis in that it ignores the rule previously set down in *Denton v. Con-Way Southern Express*, 261 Ga., supra. The deciding opinion also contains an inference that *State v. Sanks*, 225 Ga. 88 (166 SE2d 19) (1969), stands for the proposition that the Georgia equal protection provisions grant no more protection than does federal equal protection doctrine. I see no merit in that inference. A close reading of that case reveals that we merely said that the equal protection and due process clauses of the Fourteenth Amendment are *comparable* to certain provisions of the Georgia Constitution. The more accurate analysis is that, as mentioned above, the Georgia equal protection provisions adopted in 1983 offer greater protections than their federal counterpart. Thus, the protections offered by the federal equal protection clause are a subset of the more expansive protections afforded by the Georgia Constitution and are subsumed by them. See, e.g., *Denton*, supra at 41-46. Finally, in *Ambles v. State*, 259 Ga. 406 (383 SE2d 555) (1989), we cited *McDaniel v. Thomas*, 248 Ga. 632 (285 SE2d 156) (1981), for the proposition that the Georgia equal protection provisions are "*substantially equivalent* of equal protection of the laws under the U. S. Constitution." Id. at 638. I do not believe that *substantially equivalent* means identical.

paramount duty of government, and shall be impartial and complete.' " In that dissent, Justice Weltner stated, "[w]hile the majority opinion presents a thoughtful analysis of the treatment of this issue by the United States Supreme Court, we need look no further than our own [c]onstitution. . . . The statute [at issue] violates the constitutional requirement of impartial and complete protection to person and property." *Poulos*,. 250 Ga. at 365.

Moreover, although our court has, in the past, applied federal-style equal protection analysis following *Georgia R. v. Wright,* I note that when it did so, our constitution lacked specific language addressing equal protection. That reading of equal protection into our guarantees of protection of person and property was done without any discussion or determination that our constitutional protections were limited to the parameters of the federal equal protection clause. Furthermore, all of the cases citing *Georgia R.* on the issue of equal protection were decided prior to our state's adoption of the Constitution of 1983.

However, even putting aside the issue of whether this court correctly interpreted the past constitutions, the question today is: did the Constitution of 1983 create a new equal protection analysis?

I believe that it did.

It is plain that the framers of the Constitution of 1983 were aware of the distinctions between the two sentences comprising Art. I, Sec. I, Par. II, and intended to extend to Georgians protections beyond those encompassed by the United States Constitution.[6] Under

---

[6] The June 17, 1981 Legislative Overview Committee, in order to prevent the need to add any additional suspect classes which might arise in the future, returned to the original language which it understood prohibited all discrimination. It adopted the more expansive "impartial and complete" clause for two reasons. The committee wanted to end discrimination against the traditional suspect classes, and it wanted to leave room for the constitution to grow. To achieve these goals, the committee considered and rejected adopting the federal clause combined with an enumeration of the suspect classes.

> GOVERNOR BUSBEE: [W]e historically have when we discuss constitutional rights at the national or at the state level, historically we've had suspect classes when it comes to discrimination. These are because of race, because of sex, because of national origin, because of religion or because of ancestry. I have talked to numerous lawyers here and several that are not members of the committee, but no one can identify any suspect class that is not included in these provisions.
>
> [B]ut I think that you should recognize in the basic document that you're not going to have any discrimination against suspect classes, which include race, sex, national origin, religion or ancestry. (Legislative Overview Committee, June 17, 1981, Vol. 1 at 104-105.)

Senator Barnes then accentuated the advantage of the Georgia clause over the federal clause combined with the enumeration of the suspect classes.

> SENATOR BARNES: Under the constitution now we do not have a provision in the constitution that says no person shall be denied the equal protection of the laws. What we do have, and what the courts have interpreted to be the equal protection laws is this: Protection of person and property is a paramount duty of government, and shall be impartial and complete.

current federal equal protection analysis, differing degrees of review are granted by the federal courts depending upon such distinctions as whether the issue affects "fundamental" rights or the rights of certain "suspect" classes. If a "fundamental" right or "suspect" class is affected, a standard of strict judicial scrutiny is applied, i.e., the law or regulation must be narrowly tailored to serve a compelling state interest. See *San Antonio Independent School District v. Rodriguez*, 411 U. S. 1 (93 SC 1278, 36 LE2d 16) (1973). If neither a "fundamental" right or a "suspect" class is affected the law need only bear a rational relationship to some legitimate state purpose. *Williamson v. Lee Optical*, 348 U. S. 483 (75 SC 461, 99 LE 563) (1955). In considering the draft of the 1983 Georgia Constitution, the (Georgia) Select Committee on Constitutional Revisions was particularly concerned with preventing discrimination based on categories such as race, sex, religion, and national origin. Select Committee on Constitutional Revisions, December 17, 1979 at 13. The dilemma facing the framers was whether to draft a constitution for the day by specifically enumerating those "suspect" classes or to draft a lasting constitution by extending constitutional protections to all Georgians. Legislative Overview Committee, June 17, 1981, Vol. 1 at 108.

The proponents of the deciding opinion disregard this evidence and assert that the legislative history is inconclusive and does not support the reasoning in *Denton*. As shown above, I disagree. Moreover, even assuming that the legislative history is inconclusive, their assertions fail. Under our rule of constitutional construction it is "not to be supposed that any words have been employed without occasion, or without intent that they should have effect as part of the law." *Wellborn v. Estes*, 70 Ga. 390, 397 (1883). We are to presume that "the people . . . have expressed themselves in careful and measured terms" and therefore "the courts . . . must lean in favor of a construction which will render every word operative." Id. at 397.

Thus, it is the burden of those challenging the meaning of a constitutional provision to affirmatively establish that the words of that provision do not hold their plain meaning. This the proponents of the deciding opinion have failed to do.

It is clear from the committee reports that the drafters considered the possibility of removing the language concerning impartial

Now that's what the courts have interpreted to be the equal protection clause, and what the committee tried to do was because that is foreign to the language generally associated with the equal protection is to put due process and equal protection in one provision, and then to take out this section about the duty of government being paramount. But if you prohibit all discrimination and do not . . . allow . . . discrimination [without specifying] these suspect criteria, **then you prohibit all discrimination.** (Emphasis supplied.) (Legislative Overview Committee, June 17, 1981, Vol. 1 at 108-109.)

and complete protection to persons and property, and replacing it with the words: "No person shall be denied the equal protection of the laws." Instead, they chose to retain the requirement that protection to person and property be "impartial and complete." See discussion at n. 6, supra. To this sentence, the framers appended the separate but complementary equal protection clause. The only proper conclusion is that Georgia's historical emphasis on the protection of person and property and the concept of equal protection under the laws were fused to form a new entity greater than its individual parts.

Our constitutional form of government is predicated upon the separation of powers among the executive, the legislative, and the judicial branches. The power to alter the words of the Georgia Constitution lies with the legislature and the people, and this court must always be wary of usurping that power. If the legislature and the people of this state want the parameters of Art. I, Sec. I, Par. II to be defined by the federal equal protection clause they may do so by amending the constitution.

Absent such an amendment, the issue before this court is whether we will follow the words of our constitution and this court's own standard for construing that constitution. As we stated in *Denton v. Con-Way Southern Express*, 261 Ga. at 44:

> The object of construction, as applied to a written constitution, is to give effect to the intention of the people in adopting it . . .

> [F]or, we repeat that it is scarcely conceivable that a case can arise where a court would be justifiable in declaring any portion of a written constitution nugatory . . . or so treating it as to render any word there "inoperative," or "idle" . . .

The deciding opinion's construction of the first sentence of Art. I, Sec. I, Par. II would merely make the second sentence a reiteration of the first. It would render it idle and inoperative. I do not believe that the inclusion in Georgia's Bill of Rights of the sentence: "Protection to person and property is the paramount duty of government and shall be impartial and complete," simply echoes the meaning of "No person shall be denied the equal protection of the laws." Instead, I believe that the words "impartial and complete" are distinct and important in their own right because they do not presuppose which Georgians are fully protected by our laws and constitution and which Georgians are not.

As with any other constitutional provision, including the federal equal protection clause, the scope of the law providing "impartial and complete" protection to all persons and their property must rightfully

evolve from other cases, further argument, much thought and full and free discussion — over time. It is not our place, in any one case, to presume to set down a comprehensive standard. Our history shows that constitutional interpretation is a fluid process, not a static one. This evolution can only occur if the full meaning of Art. I, Sec. I, Par. II is not now rendered impotent.

Because I have sworn to uphold the laws and the Constitution of Georgia, because I believe in the viability and independence of that constitution, because I trust in the wisdom of the framers of that constitution, and because I rely on the validity of language, I must respectfully dissent to the rejection of the equal protection analysis announced in *Denton v. Con-Way*.

I am authorized to state that Presiding Justice Bell and Justice Benham join in this opinion.

WELTNER, Chief Justice, concurring in part, dissenting in part.

I concur with Division 2 and dissent from Divisions 1, 3 and the judgment.

1. I agree that *Denton v. Con-Way Southern Express*, 261 Ga. 41 (402 SE2d 269) (1991) is not controlling. *Denton* was never a majority opinion; there were as many members of this court disagreeing as agreeing with it.

2. As to Division 1, I have reviewed the precedents and, while I respect their authority, I disagree with their conclusion.[7]

3. (a) OCGA § 46-7-12 (e) provides:

> It shall be permissible under this article for any person having a cause of action arising under this article in tort or contract to join in the same action the motor carrier and its surety, in the event a bond is given. If a policy of indemnity insurance is given in lieu of bond, it shall be permissible to join the motor carrier and the insurance carrier in the same action, whether arising in tort or contract.

(b) I consider this provision to violate equal protection, as I discern no rational basis for the disparate treatment of insurance companies, depending upon the nature of the insured.

---

[7] In *Lloyds America v. Brown*, 187 Ga. 240 (200 SE 292) (1938), the entire discussion of the attack on the constitutionality of the statute on equal protection grounds consisted of the following:

> The portion of the act must be considered in connection with the entire act of which it is a part, passed in exercise of the police power of the State. When so considered, while dealing with a question of procedure — joinder of causes of action, it does not make an arbitrary and unreasonable classification. . . . [Id. at 243.]

In *Harper Motor Lines v. Roling*, 218 Ga. 812 (130 SE2d 817) (1963), we held that the decision in *Lloyds America*, supra, was controlling.

DECIDED JULY 9, 1992 —
RECONSIDERATION DENIED JULY 30, 1992.

*Webb, Carlock, Copeland, Semler & Stair, Thomas S. Carlock,
D. Gary Lovell, Jr.,* for appellants.

*Ford & Haley, James L. Ford, David C. Cole,* for appellees.

*William S. Stone, Middle & Anderson, Elizabeth F. Bunce, Butler, Wooten, Overby & Cheely, C. Frederick Overby, Patrick A. Dawson,* amici curiae.