A92A0103. CINCINNATI INSURANCE COMPANY v. REYBITZ.
A92A0104. STEWART et al. v. REYBITZ.
(421 SE2d 767)

SOGNIER, Chief Judge.

Konrad Reybitz brought suit against Deborah and Mark Stewart and the Stewarts' automobile insurance carrier, Cincinnati Insurance Company. In Counts 1 and 2, Reybitz sought to recover from the Stewarts damages for injuries he incurred when Deborah Stewart, while driving a vehicle owned by Mark Stewart, allegedly struck Reybitz as he bicycled down a public street. In Count 3, Reybitz sought to recover from Cincinnati the personal injury protection (PIP) benefits he claimed pursuant to former OCGA § 33-34-7 (a) (3) as a pedestrian under the Stewarts' policy, statutory penalties, and penalties for bad faith failure to pay insurance proceeds.[1] The trial court denied the defendants' motion to bifurcate the claims, and the case proceeded to trial. The jury returned a verdict against the Stewarts for $75,000 in actual damages and $75,000 in punitive dam-

---

[1] The accident in issue occurred on March 30, 1988, and thus resolution of this appeal involves the 1974 version of the Georgia Motor Vehicle Accident Reparations Act, former OCGA § 33-34-1 et seq., repealed effective October 1, 1991. Ga. L. 1991, p. 1608.

ages. The jury returned a verdict against Cincinnati for $4,304 in PIP benefits, $5,380 in statutory penalties, $33,500 in attorney fees, and $750,000 in punitive damages. The appeals by the Stewarts and Cincinnati are consolidated in this opinion.

At trial appellee testified that he was bicycling near the roadside edge of the right lane of a four lane road in Cobb County when Ms. Stewart, driving a red Jeep Cherokee, moved into his lane as the road curved sharply heading downhill. Appellee testified that he was travelling 15 to 20 miles per hour and braking only slightly when the Jeep moved entirely into his lane. He testified that the right rear quarter of the vehicle hit his left shoulder with such force that the side of the Jeep momentarily dented and then popped out. Statements appellee made indicated that as a result of the contact, his bicycle was knocked out from under him and he flew through the air then slid on his arms a total of approximately 40 yards. Appellee suffered abrasions and a torn rotator cuff in his left shoulder as a result of his fall. Evidence was adduced that appellee's medical bills totalled under $4,000; that surgery to repair the slow-healing rotator cuff could cost around $7,000; and that the damage to appellee's bicycle was repaired for $57.29.

Ms. Stewart testified that when she passed appellee, her vehicle was mostly in the inside lane with only the right wheels in appellee's lane. She stated she cleared him on the curve and moved into his lane ahead of him and that when she was three or four car lengths past him she looked in her car mirror and saw that he had fallen. She stated that she did not hear or feel any contact between her vehicle and appellee. Cynthia Milum, a motorist who stopped to offer help to appellee, testified that he declined her offer to telephone for an ambulance and asked her instead to get the license plate number of the Jeep. Milum testified that after she pursued Ms. Stewart and got the number, she informed Ms. Stewart that appellee claimed she had hit him and that Ms. Stewart denied having done so. The evidence conflicted whether Milum told Ms. Stewart that she should return to the scene of appellee's fall, but it is uncontroverted that she did not return.

There were no eyewitnesses to the incident although Betty Weaver, who worked at an office building near the scene, testified that after she heard tires screeching, she looked out her window to see a red vehicle ahead of the bicyclist, who was airborne at the time. Evidence regarding the condition of the road at the sharp curve where the incident occurred was conflicting, as was the testimony whether appellee's description of his fall was more consistent with being sideswiped by a 3,000 pound vehicle than with losing control of the bicycle because of contact with debris or pavement ripples on the road.

1. Appellants in both appeals contend that the trial court erred

by denying their joint motion to bifurcate the trial of appellee's negligence claim against the Stewarts from the trial of the PIP claim against Cincinnati.

The Stewarts contend that the jury's consideration of appellee's negligence claim against them was prejudiced by the joinder of the claims against their insurance carrier, the result of which was to authorize the introduction of matters irrelevant to the negligence claim, such as the PIP benefits portion of the Stewarts' policy (thereby indicating to the jury that the Stewarts possessed liability coverage) and the particulars of Cincinnati's investigations into the claim, including an internal evaluation by a Cincinnati representative of the credibility of Ms. Stewart and appellee as witnesses.

The law of this State clearly supports the Stewarts' position that the admission of this evidence was reversible error. " 'In an ordinary negligence case, not only is a liability insurance policy of a litigant not admissible in evidence, but disclosure to the jury of the mere existence of such contract is ground for a mistrial. (Cits.)' [Cit.] This principle is operative not only with reference to liability insurance but also with regard to no fault coverage. [Cits.]" *Moore v. Price*, 158 Ga. App. 566, 567 (281 SE2d 269) (1981). "We have repeatedly adhered to the rule that evidence of insurance coverage is so prejudicial by nature that it should not be admitted unless it is clearly relevant and, as with any generally prejudicial evidence, in determining its admissibility, the trial court should not admit it unless its relevance outweighs its prejudice. The prejudice lies in the infectious nature of collateral source evidence, contaminating as it does the issue of loss with the issues of injury and liability. [Cit.] Such evidence is *prejudicial* because by its nature its effect is not self-limiting, but it laps over into other considerations." *Collins v. Davis*, 186 Ga. App. 192, 193 (366 SE2d 769) (1988). The Supreme Court has recently reaffirmed the general principle that evidence of a collateral source such as insurance coverage is inherently prejudicial and readily subject to misuse by juries. *Denton v. Con-Way Southern Express*, 261 Ga. 41, 42-43 (402 SE2d 269) (1991) (addressed constitutional challenge to OCGA § 51-12-1 (b)).[2]

(a) The primary reason set forth by the trial court for joining appellee's claims despite the prejudice to the Stewarts presented by the admission of insurance coverage evidence was that because appellee claimed to be entitled to PIP benefits as a "pedestrian struck by" Ms. Stewart, see former OCGA § 33-34-2 (5), appellee was authorized

---

[2] The Supreme Court in *Grissom v. Gleason*, 262 Ga. 374 (418 SE2d 27) (1992) recently disapproved *Denton v. Con-Way Southern Express*, 261 Ga. 41 (402 SE2d 269) (1991) to the extent that it suggests a new equal protection analysis. *Grissom*, supra at 376 (2). See Division 1 (d), infra.

under former OCGA § 33-34-6 (b) to bring an action against Cincinnati directly to recover the benefits. Based on the fact that appellee could bring direct actions against both the Stewarts (for the negligence claim) and Cincinnati (for the PIP benefits), the trial court determined that OCGA § 9-11-20 (a) applied and authorized joinder of the two actions because the claims against appellants arose out of the same occurrence and shared the common question of fact as to whether appellee had indeed been struck by Ms. Stewart.

The trial court analogized this situation to the joinder in OCGA §§ 46-7-12 (e) and 46-7-58 (e) of a motor carrier and its insurer in a suit by an injured plaintiff, as discussed in *Continental Ins. Co. v. Mercer*, 130 Ga. App. 339, 340 (1) (203 SE2d 297) (1973) (citing former Ga. Code Ann. § 68-612). Both OCGA §§ 46-7-12 (e) and 46-7-58 (e) expressly provide in identical language that "it shall be permissible to join the motor carrier and the insurance carrier in the same action." In the recent opinion in *Grissom v. Gleason*, 262 Ga. 374 (418 SE2d 27) (1992), involving an equal protection challenge to OCGA § 46-7-12 (e), the Supreme Court acknowledged that the statute results in "disparate" and "differential" treatment of motor carriers from "other insured defendants," and upheld the constitutionality of the statute authorizing joinder of motor carriers and their insurers only after determining that the provision "is based on a rational distinction directly related to the purpose of the Motor Carrier Act." Id. at 377 (3).

There is no explicit language in the 1974 version of the Georgia Motor Vehicle Accident Reparations Act (former OCGA § 33-34-1 et seq., hereinafter "the Act") comparable to the joinder provision in OCGA §§ 46-7-12 (e) and 46-7-58 (e). It does not follow from the fact that a pedestrian struck by an insured may bring actions against both the insured and the insured's no-fault carrier that joinder is proper absent a statutory provision *restricting* such joinder. Rather, because joinder in these circumstances results in the "differential treatment" of defendants with no-fault insurance from other insured defendants, see *Grissom*, supra, we conclude that in the absence of an express statutory provision *authorizing* the joinder of the pedestrian's negligence claim against the insured with the claim against the insurer for failure to pay PIP benefits, such joinder is not permitted.

The admission of evidence of no-fault insurance coverage is inherently prejudicial in a negligence action against the insured. *Denton; Collins; Moore*, supra. Prejudice to the parties is one of the statutory grounds for severance. OCGA § 9-11-42 (b); see *Atlanta Air Fleet v. Ins. Co. of N. A.*, 130 Ga. App. 15, 16 (2) (202 SE2d 192) (1973); see also *Plaza Pontiac v. Shaw*, 158 Ga. App. 799, 800 (1) (282 SE2d 383) (1981) (admission of prejudicial evidence is sufficient to trigger the authority granted by OCGA § 9-11-42 (b) to order a sepa-

rate trial). In *Chupp v. Henderson*, 134 Ga. App. 808 (216 SE2d 366) (1975), a case in which the liability of an alleged reckless driver was asserted together with a claim against the driver's employer for negligent entrustment, we noted that evidence "essential" to support punitive damages for the negligent entrustment claim would be "irrelevant and prejudicial in the resolution of the issues [regarding the driver's liability]." Thus, we held that "[t]he obvious solution to the problem is a separate trial of issues presented in [the count against the driver] from those presented in [the negligent entrustment counts], pursuant to [OCGA § 9-11-42 (b)]." Id. at 811 (2).

A comparable situation is presented in the case sub judice. Evidence of the policy providing no-fault benefits to a pedestrian struck by an insured as well as evidence regarding the action taken and the matters considered by the insurer in assessing the pedestrian's claim are essential to establish a claim by the pedestrian for PIP benefits and bad faith penalties for failure to pay the claim. See generally *Hufstetler v. Intl. Indem. Co.*, 183 Ga. App. 606, 608-609 (359 SE2d 399) (1987). This evidence, however, is irrelevant and prejudicial to the just resolution of issues regarding the insured's liability for striking the pedestrian. *Denton; Collins; Moore*, supra. We agree with appellants that the obvious, and only, solution to the problem was to separate trial of these issues upon proper objection by the parties to the joinder. See *Sollek v. Laseter*, 124 Ga. App. 131 (183 SE2d 86) (1971).[3]

We do not agree with the trial court that its order joining appellee's claims against appellants is condoned by our holding in *Miller v. Spicer*, 147 Ga. App. 759 (250 SE2d 492) (1978), a no-fault case with a similar procedural setting in which the insured and insurer were tried together as defendants. No objection to the joinder was raised on appeal and in our opinion we neither approved nor disapproved of the joinder. While *Miller* arguably stands for the proposition that the parties can waive separate trials and all objections to the admission of insurance coverage evidence, nothing in the holding in *Miller* suggests that joinder of insured and no-fault insurance carrier as defendants is proper where objection has been made. As we noted in *Collins*, supra, "we resist any inference that a [holding] in a particular case indicates a loosening of [the] general rule [that evidence of insurance is inadmissible]." Id. at 194.

(b) The trial court expressly noted that it was exercising its discretion in denying the motion and joining the issues and that such

---

[3] We note that in the interest of judicial economy, to avoid repeating the evidence common to both claims, the same jury could decide both the negligence phase of the trial and the no-fault phase. See *Southern Guar. Ins. Co. v. Nixon*, 194 Ga. App. 398, 399-400 (1) (390 SE2d 638) (1990).

discretion "will not be controlled on appeal unless it can be illustrated how the rights of a complaining party have been adversely affected by the trial court's action. [Cits.]" *McGowan v. North Ga. Prod. Credit Assn.*, 246 Ga. 135, 136 (1) (269 SE2d 25) (1980). We find the adverse effect on the Stewarts of the trial court's denial of their motion to bifurcate is amply illustrated by a review of the testimony at trial, the documents published to the jury, the actual damages adduced by appellee, and the verdict returned by the jury. Accordingly, we conclude that the trial court abused its discretion by denying the motion to bifurcate appellee's claims.

(c) We do not agree with the trial court that joinder of these claims was justified on the grounds of judicial economy. While we are cognizant of the benefits of judicial economy and note that the trial court correctly recognized that one purpose of the no-fault law is to resolve claims quickly and to eliminate wasteful litigation, *Teasley v. Mathis*, 243 Ga. 561, 563 (1) (255 SE2d 57) (1979), although a court may exercise its inherent discretion to resolve matters in the interest of judicial economy, *Cheeley v. Henderson*, 261 Ga. 498, 501 (405 SE2d 865) (1991), the goal of judicial economy cannot justify sacrificing the rights of the parties. *Pizza Hut of America v. Kesler*, 254 Ga. 360 (2) (329 SE2d 133) (1985). Given the prejudicial nature of the evidence admitted during the trial of appellee's negligence claim against the Stewarts, see *Denton*, supra, we do not agree with the trial court that judicial economy warranted joinder of appellee's claims against appellants.

(d) The trial court also based its denial of the motion to bifurcate on the applicability of OCGA § 51-12-1 (b), which provides that evidence of collateral sources "shall be admissible for consideration by the trier of fact." This statute was held unconstitutional by a plurality of the Supreme Court in *Denton*, supra. (Smith, P. J., Benham, J., and Judge Hugh D. Sosebee, Sr. held the statute violated the equal protection clause of the Georgia Constitution; Fletcher, J., joined by Judge Thomas Pope, concurred on the basis that the statute was unconstitutionally vague.) In *Grissom*, supra, which addressed a constitutional challenge to OCGA § 46-7-12 (e) (authorizing joinder of motor common carrier and its insurer in same action by plaintiff having cause of action under OCGA § 46-7-1 et seq.), the Supreme Court disapproved *Denton* "to the extent that it suggests a new equal protection analysis. . . . [T]he *Denton* decision is an aberration in this court's interpretation of the equal protection provision." *Grissom*, supra at 376 (2). The *Grissom* court did not expressly overrule the holding in *Denton* regarding the constitutionality of OCGA § 51-12-1, and based on the language employed by the Supreme Court in *Grissom* regarding its disapproval of *Denton*, we conclude that the holding in *Denton* is still the law of this State, even if the analysis sug-

gested therein is not. Accordingly, the trial court erred by basing its denial of the motion to bifurcate on the applicability of OCGA § 51-12-1 (b), which was held unconstitutional in *Denton*, supra.

(e) We find no merit in appellee's argument that appellants waived their right to object to the denial of the motion and the admission of the insurance evidence because they did not object to evidence as it was introduced at trial. Appellants preserved their objection by moving to bifurcate on the specific basis that a joint trial would introduce evidence of insurance relevant to the PIP claim but irrelevant and prejudicial to the negligence claim. Once the motion was denied, any objection to the admission of the insurance coverage evidence at trial would have been futile because the relevancy of that evidence for the PIP claim was uncontroverted. Compare *Hightower v. McIntyre*, 170 Ga. App. 269-270 (1) (316 SE2d 849) (1984).

(f) Because Cincinnati's liability on appellee's no-fault claim is contingent upon a determination that Ms. Stewart struck appellee so as to place him within the statutory definition of a pedestrian so as to invoke coverage under the policy Cincinnati issued the Stewarts, and given our holding that the admission of the prejudicial insurance evidence may have contaminated the jury's determination of Ms. Stewart's liability, we do not agree with appellee's argument that the denial of the motion to bifurcate did not adversely affect Cincinnati. Accordingly, the trial court erred by denying the motion to bifurcate in regard to Cincinnati.

(g) Therefore, because the trial court erred by denying appellants' motion to bifurcate, the judgment entered against the Stewarts and Cincinnati is reversed.

2. Since the issue may arise upon retrial, we address the Stewarts' contention that the trial court erred by denying their motion in limine as to certain opinion testimony of witnesses Betty Weaver and Gregory Whitaker, the police officer who investigated the alleged hit and run, regarding their opinions of the cause of appellee's fall. Assuming the testimony of these witnesses is substantially the same upon retrial, we find no error in admitting the testimony of Weaver who, as a lay witness, is permitted to give her opinion as to the cause of appellee's fall after she fully describes her own observations of the incident. *Avant Trucking Co. v. Stallion*, 159 Ga. App. 198, 200 (1) (283 SE2d 7) (1981); *Dual S. Enterprises v. Webb*, 138 Ga. App. 810, 811-812 (2) (227 SE2d 418) (1976).

As to Whitaker, however, the transcript reveals that he testified that by the time he arrived on the scene of the accident, the witnesses had left, the bicycle had been moved, and no physical evidence existed to be examined. His examination of appellee's bicycle, which had been placed in a police vehicle, showed no sign of contact with or paint transfer from a vehicle. Whitaker was allowed to testify that he

believed a hit and run had occurred, but the transcript reveals that his opinion was based on hearsay statements by a police officer at the scene, a telephone conversation he had with Milum during his investigation, and a statement Whitaker obtained from appellee at the hospital. Even assuming, arguendo, that Whitaker was qualified as an expert, his testimony established that the opinion he gave was based almost exclusively on hearsay statements that were not part of the res gestae. The admission of the challenged testimony was error. *Haynes v. Huff*, 165 Ga. App. 192 (299 SE2d 902) (1983); *Avant Trucking*, supra. Compare *Quality Rental Co. v. Grier*, 187 Ga. App. 5, 6 (3) (369 SE2d 276) (1988).

3. Our reversal of the judgment renders it unnecessary for us to address appellants' remaining enumerations of error.

*Judgment reversed. McMurray, P. J., and Cooper, J., concur.*

DECIDED JULY 16, 1992 —
RECONSIDERATION DENIED JULY 27, 1992.

*Alston & Bird, G. Conley Ingram, Nancy Glenn*, for appellant (case no. A92A0103).

*Goodman, McGuffey, Aust & Lindsey, William S. Goodman, Kathryn A. Cater*, for appellants (case no. A92A0104).

*William R. Waldrop*, for appellee.