A93A0333, A93A0334. McKIN v. GILBERT; and vice versa.
(432 SE2d 233)

BEASLEY, Presiding Judge.

Plaintiff Gilbert was riding her horse on Georgia Highway 95 at 3:15 a.m., when she was allegedly struck from the rear by an automobile being driven by defendant McKin. The collision occurred on July 28, 1991, prior to the effective date of repeal of the Georgia Motor Vehicle Accident Reparations Act of 1974, former OCGA § 33-34-1 et seq., October 1, 1991. Ga. L. 1991, p. 1608. Gilbert sued McKin to recover damages for her injuries and the death of her horse. We granted companion applications for appeal to consider two interlocutory rulings relating to the joinder of party defendants.

McKin admitted drinking two beers between 8:00 and 10:00 p.m. on the night of the incident. She then drove her car toward Chattanooga, stopping at a cocktail lounge in Tennessee from 11:00 p.m. un-

til 2:00 a.m., where she consumed less than 12 ounces of beer. Upon leaving, she was stopped by police for weaving, given a field sobriety test, and released. She proceeded on her way, but was stopped shortly thereafter by a state patrolman, at whose request she produced a driver's license and proof of insurance. She was again permitted to continue.

As she drove southbound along Highway 95, she observed Gilbert one or two car lengths ahead riding her horse in the southbound lane of traffic. It was a foggy night and the horse and rider were not illuminated. She applied the brakes but was unable to avoid hitting the horse. She stopped her car, got out to observe both Gilbert and the horse lying in a ditch at the side of the road, and drove to a nearby house to summon help. She returned to the accident site and reported to an unidentified man that she had called an ambulance. She left the scene and drove to the home of family members, who accompanied her at 4:15 a.m. to the sheriff's office. She reported the accident, took a breath test which registered .18, and was charged with DUI.

The injured party, Gilbert, admitted that she had consumed two beers at about 11:00 p.m. that evening. She drank two more beers at the home of friends until about 1:00 a.m., when she drove home alone. She went directly to the barn, saddled her horse, and rode along the paved portion of Highway 95 carrying a flashlight. She heard a car and saw headlights coming around a curve in the road. The last thing she recalled was shining her flashlight behind her and holding the horse. As a result of the impact with McKin's car, Gilbert was thrown from the horse and injured, and the horse was killed. Gilbert's blood alcohol level was .11.

### Case No. A93A0333

1. Defendant McKin contends the trial court erred in granting Gilbert's motion to join McKin's automobile liability insurer, Dairyland Insurance Company, as a party defendant to be sued directly in this negligence action against its insured.

The Dairyland policy provided $15,000 in liability coverage. The carrier defended the claim against McKin but rejected Gilbert's demand to settle at policy limits, contending that Gilbert was at least 50 percent at fault. Dairyland eventually offered $2,500 in settlement, which Gilbert rejected.

Gilbert sought joinder of McKin's insurer as an indispensable party under OCGA § 9-11-19, as well as under the permissive joinder provision of OCGA § 9-11-20. Her motion was grounded on the assertion that Dairyland had engaged in bad faith in failing to offer the policy limits in settlement. She claimed joinder was necessary, reasoning that "[b]ecause . . . a judgment in this case will exceed $15,000, the plaintiff should not be required to await an excess judgment, and

then rely on McKin to execute an assignment in Gilbert's favor so as to allow Gilbert to proceed against Dairyland directly, which would result in a second, otherwise unnecessary lawsuit and take valuable time from the court." Abusive litigation damages were sought against Dairyland for continuing the proceedings without substantial justification pursuant to OCGA § 51-7-81 (2).

" ' " "In an ordinary negligence case, not only is a liability insurance policy of a litigant not admissible in evidence, but disclosure to the jury of the mere existence of such contract is ground for a mistrial. (Cits.)" (Cit.) This principle is operative not only with reference to liability insurance but also with regard to no fault coverage. (Cits.)' [Cits.] 'We have repeatedly adhered to the rule that evidence of insurance coverage is so prejudicial by nature that it should not be admitted unless it is clearly relevant and, as with any generally prejudicial evidence, in determining its admissibility, the trial court should not admit it unless its relevance outweighs its prejudice. The prejudice lies in the infectious nature of collateral source evidence, contaminating as it does the issue of loss with the issues of injury and liability. (Cit.) Such evidence is *prejudicial* because by its nature its effect is not self-limiting, but it laps over into other considerations.' [Cit.]" *Cincinnati Ins. Co. v. Reybitz*, 205 Ga. App. 174, 176 (1) (421 SE2d 767) (1992).

Unlike *Reybitz*, in which a negligence action against the tortfeasor included a separate PIP claim against the insurer and we approved bifurcated trial of the separate issues, Dairyland was joined as a party defendant in the negligence action against McKin. "The general rule is that because there is no privity of contract, a party may not bring a direct action against the liability insurer of the party who allegedly caused the damage unless there is an unsatisfied judgment against the insured or it is specifically permitted either by statute or a provision in the policy." *Hartford Ins. Co. v. Henderson & Son*, 258 Ga. 493, 494 (371 SE2d 401) (1988). None of those exceptions is present. Compare the following common carrier cases where direct action against the insurer is authorized *by statute* to further the policy of the Motor Carrier Act: *Grissom v. Gleason*, 262 Ga. 374 (418 SE2d 27) (1992); *Andrews v. Yellow Freight System*, 262 Ga. 476 (421 SE2d 712) (1992); *Denton v. Con-Way Southern Express*, 261 Ga. 41 (402 SE2d 269) (1991) (overruled in *Grissom* to the extent that it suggested a new equal protection analysis).

It follows that Dairyland may not be sued directly as a party defendant in Gilbert's action against McKin. *Hartford Ins. Co. v. Henderson & Son*, supra. Of course, for the sake of judicial economy and in order to remove the issue of insurance from the jury's consideration during the trial on the negligence claim, it would be well to utilize the procedure described in *Reybitz*, i.e., "a separate trial of the

issues. . . ." Id. at 178. Bifurcation avoids the repetition of evidence common to both claims, by having the same jury decide, albeit serially, both the negligence claim and any subsequent no-fault claim which may be authorized against the insurer. This economizes for everyone involved, i.e., court, witnesses, jurors, parties, and counsel, but yet precludes the evil of prejudice. However, the law does not currently permit it.

2. Gilbert's claim against Dairyland for abusive litigation under OCGA § 51-7-80 et seq., is premature in any event. Under OCGA § 51-7-84 (b), such a claim "requires the final termination of the proceeding in which the alleged abusive litigation occurred and must be brought within one year of the date of final termination." The proper procedure is set out in *Talbert v. Allstate Ins. Co.*, 200 Ga. App. 312 (408 SE2d 125) (1991).

## Case No. A93A0334

3. Plaintiff Gilbert contends the trial court erred in denying her motion for joinder of Larry Mason, d/b/a Palomino Restaurant and Lounge, the establishment at which McKin was allegedly a patron on the night in question. She contends that Mason was a joint tortfeasor under OCGA § 51-1-40 (b) for having sold beer to McKin, who was "in a state of noticeable intoxication, knowing that [she] will soon be driving a motor vehicle. . . ." Joinder was sought both as an indispensable party under OCGA § 9-11-19 and under the permissive joinder provision of OCGA § 9-11-20.

The threshold question is whether Georgia has jurisdiction over the nonresident lounge owner with respect to this alleged tort. Jurisdiction was predicated on subsection (3) of our Long Arm Statute, OCGA § 9-10-91, which is applicable to tort actions arising from acts and omissions occurring outside the state which lead to injury inside the state. Gilbert's motion for joinder was based on the factual assertion that, "[t]he Palomino regularly solicits business in this state. . . ." There is no evidence of record that Mason regularly solicited business in Georgia and no basis to confer personal jurisdiction under OCGA § 9-10-91 (3). The *only* evidence connecting Mason to the alleged tort is McKin's testimony that she was present in his establishment from 11:00 p.m. until 2:00 a.m. on the night of the incident and that she consumed one beer while there. Gilbert failed to produce any evidence that Mason had done any of "the acts set forth in OCGA § 9-10-91 which must be done in order to subject [him] to personal jurisdiction of a Georgia court. . . . The rule that controls is our statute, which requires that an out-of-state defendant must do certain acts within the State of Georgia before he can be subjected to personal jurisdiction." *Gust v. Flint*, 257 Ga. 129, 130 (356 SE2d 513) (1987). Likewise, there is no jurisdiction over Mason in this suit.

*Judgment in Case No. A93A0333 reversed. Judgment in Case No. A93A0334 affirmed. McMurray, P. J., and Cooper, J., concur.*

DECIDED JUNE 1, 1993.

*Clifton M. Patty, Jr.*, for appellant.
*Bruce & Hentz, W. Davis Hentz*, for appellee.